**K.R.K. IRVINE, INC., and Jorge Torres, Plaintiffs-Appellants,**

v.

**Michael LANDON, District Director, and Immigration and Naturalization Service, Defendants-Appellees.**

No. 81–5915.

United States Court of Appeals, Ninth Circuit.

Argued July 7, 1982.

Submitted Oct. 14, 1982.

Decided Feb. 23, 1983.

John F. Sheffield, Pasadena, Cal., for plaintiffs-appellants.

Katherine V. Tooks, Asst. U.S. Atty., Los Angeles, Cal., for defendants-appellees.

Before ANDERSON, SCHROEDER[1] and FERGUSON, Circuit Judges.

PER CURIAM:

Jorge Torres and K.R.K. Irvine, Inc. (appellants) appeal the district court's denial of their motion for a preliminary injunction. Appellants seek to enjoin the Immigration and Naturalization Service (INS) from deporting Torres pending the result of an action in which appellants have challenged the INS's denial of their application for a sixth preference visa for Torres. The district court, adopting a report and recommendation prepared by a federal magistrate, ruled that appellants were not entitled to a preliminary injunction because they failed to demonstrate probable success on the merits of their claim against the INS. Appellants argue that the district court's ruling was based on erroneous legal

---

**1.** Judge Reinhardt, originally a member of the panel, is temporarily disabled from participation. Judge Schroeder was randomly selected to replace Judge Reinhardt. The panel determines that reargument is unnecessary.

premises and should be reversed. We find, however, that the district court did not err and therefore we affirm the denial of appellants' motion for a preliminary injunction.

## BACKGROUND

Jorge Torres is a native and citizen of Argentina who entered the United States on or about September 17, 1975 as a non-immigrant visitor for a temporary period. Sometime in November of 1975, Torres began working for appellant K.R.K. Irvine, Inc.

On June 11, 1977, appellants filed an application with the Department of Labor (DOL) pursuant to section 212(a)(14) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1182(a)(14), requesting a labor certification for Torres as a moldmaker. On October 5, 1978, the DOL issued the requested labor certification.[2]

Based on the issuance of the labor certification, K.R.K. Irvine, Inc. filed a petition on or about February 15, 1979, to classify Torres as a Sixth Preference Immigrant with the occupation of moldmaker.[3] On December 13, 1979, the INS district director denied appellants' petition. The district director found Torres had not satisfied the requirements necessary to perform the job duties of a moldmaker. The appellants appealed the district director's decision to the regional commissioner. On April 21, 1980, the regional commissioner affirmed the decision of the district director and on June 18, 1981, appellants' motion for reconsideration was denied. As a result of the denial of appellants' application for sixth preference status, Torres became immediately de-

portable on the ground that he had remained in the United States longer than permitted under his status as a non-immigrant visitor.

On July 14, 1981, a Warrant of Deportation was issued against Torres and he was notified in writing that he was to report for deportation on July 22, 1981. On July 22, 1981, appellants filed an action challenging the INS's denial of their application for sixth preference status, and on July 27, 1981, appellants moved for a preliminary injunction enjoining Torres' deportation during the pendency of the action. On October 1, 1981, the district court denied appellants' motion and appellants then pursued this appeal.

## DISCUSSION

In this circuit, an order denying a preliminary injunction will be reversed only if the lower court abused its discretion or based its decision on erroneous legal premises. *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980); *City of Anaheim v. Kleppe,* 590 F.2d 285, 288 n. 4 (9th Cir.1978); *William Inglis & Sons Baking Co. v. ITT Continental Baking Co.,* 526 F.2d 86, 88 (9th Cir.1975). Here, appellants contend only that the district court relied on erroneous legal premises and we limit our discussion to that argument.[4] Specifically, appellants contend that the district court mistakenly based its decision on the premise that the INS has authority to determine that an alien who has obtained a labor certification from the DOL is unqualified for the job certified. In effect, appellants argue that the issuance of a labor certifica-

---

2. The labor certification stated:

   Pursuant to the provisions of section 212(a)(14) of the Immigration and Nationality Act as amended I hereby certify that there are not sufficient United States workers available and the employment of [Jorge Torres] will not adversely affect the wages and working conditions of workers in the United States similarly employed.

3. 8 C.F.R. § 212.8 requires an alien seeking sixth preference status under section 203(a)(6) of the Act to obtain a labor certification pursuant to section 212(a)(14) of the Act.

4. Appellants do raise a second issue on appeal, although they did not raise this issue before the district court below. According to appellants, the INS actually approved their petition for sixth preference status on October 18, 1979, and only later, on December 13, 1979, notified them that their application was denied. Appellants argue that the INS's failure to explain this change of position constitutes a denial of due process. Since appellants did not raise this issue below, it is not an appropriate ground on which to challenge the district court's denial of appellants' motion for summary judgment.

tion by the DOL binds the INS to find that the alien is qualified to perform the job certified.

Appellants' argument requires us to examine the statutory division of authority between the INS and the DOL. A brief description of the statutory and regulatory framework will provide useful background to this examination.

Sixth preference visas are available "to qualified immigrants who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States." 8 U.S.C. § 1153(a)(6).

As a threshold requirement, an alien seeking a sixth preference visa must obtain a labor certification from the Secretary of Labor pursuant to section 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14). Section 212(a) defines 33 different classes of aliens who are ineligible to receive visas and who will be excluded from admission to the United States unless certain requirements of the Act are satisfied. Section 212(a)(14) provides in part:

> Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, . . . and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.

Once the alien has obtained a labor certification, his prospective employer may then file a petition with the INS pursuant to section 204(a) of the Act, 8 U.S.C. § 1154(a), requesting sixth preference status for the alien. Once an application under section 204(a) has been filed, the INS must determine pursuant to the procedures prescribed in section 204(b) and accompanying regula-

tions whether the alien is qualified for sixth preference status. Section 204(b) provides in part:

> After an investigation of the facts in each case, and after consultation with the Secretary of Labor with respect to petitions to award a status under section . . . 203(a)(6) of this title, [INS] shall, if [it] determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made . . . is eligible for a preference status under section 203(a) of this title, approve the petition . . . .

This review of the statutory provisions that govern the procedure for obtaining sixth preference status demonstrates that there is a careful division of functions between the Secretary of Labor and the INS. On the face of these provisions, it appears that the DOL is responsible only for determining the availability of suitable American workers for a job and the impact of alien employment upon the domestic labor market. It does not appear that the DOL's role extends to determining if the alien is qualified for the job for which he seeks sixth preference status. That determination appears to be delegated to the INS under section 204(b), 8 U.S.C. § 1154(b), as one of the determinations incident to the INS's decision whether the alien is entitled to sixth preference status.

This interpretation of the statutory division of authority between the DOL and the INS is supported by the regulations promulgated pursuant to the Act. Under 20 C.F.R. § 656.2(e), the function of the DOL is described as follows:

> e) *Role of the Department of Labor.* (1) The role of the Department of Labor under the Act derives from section 212(a)(14) (8 U.S.C. 1182(a)(14)), which provides that certain aliens who seek to immigrate to the United States for the purpose of employment in the United States are not eligible for a visa and shall be excluded unless the Secretary of Labor has first certified to the Secretary of State and to the Attorney General that:
>
> (1) There are not sufficient United States workers, who are able, willing,

qualified and available at the time of application for a visa and admission into the United States and at the place where the alien is to perform the work, and

(ii) The employment of the alien will not adversely affect the wages and working conditions of United States workers similarly employed.

(1) This certification is referred to in this part as a "labor certification."

(3) Aliens required to be a beneficiary of a labor certification by section 212(a)(14) of the Act (8 U.S.C. § 1182(a)(14)) are:

\* \* \* \* \* \*

(ii) Aliens who are eligible for third or sixth preferences described in paragraphs (d)(1)(ii) and (iii) of this section.

Section 656.2(3) supports the view that the Secretary of Labor's function is limited to making findings about conditions in the domestic labor market. The section contains no indication that the Secretary is to pass upon the qualifications of the individual alien to perform a specific job.[5]

This reading of the applicable statutory provisions and regulations has been adopted by the DOL itself in the amicus curiae brief it submitted to this court. In its brief, the DOL states unequivocally:

> The labor certification made by the Secretary of Labor ... pursuant to section 212(a)(14) of the ... [Act] ... is binding as to the findings of whether there are able, willing, qualified, and available United States workers for the job offered to the alien, and whether employment of the alien under the terms set by the employer would adversely affect the wages and working conditions of similarly employed United States workers. The labor certification in no way indicates that the alien offered the certified job opportunity is qualified (or not qualified) to perform the duties of that job.

Brief for the Amicus Curiae, the Secretary of Labor, at 2. Although the views of the Secretary of Labor are not dispositive, we do think that in this case they are entitled to great weight. *See Saxbe v. Bustos,* 419 U.S. 65, 74, 95 S.Ct. 272, 278, 42 L.Ed.2d 231 (1974); *Investment Company Institute v. Camp,* 401 U.S. 617, 626–27, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367.

Appellants argue that another section of the applicable regulations supports their position that the INS may not find an alien unqualified for a job for which the DOL has issued a labor certification. According to appellants, what the INS has done here is *invalidate* a labor certification. Under 20 C.F.R. § 656.30(d), the INS is prohibited from *invalidating* a labor certification unless it uncovers fraud or willful misrepresentation in connection with the labor certification application. Since the INS has not alleged fraud or willful misrepresentation, appellants conclude that the INS has acted beyond its statutory authority.

Appellants' argument assumes the very question at issue: whether a labor certification is a binding determination that the alien is qualified for the job certified. If a labor certification does not certify the alien's qualifications, then what the INS has done here is not an *invalidation* of the labor certification. The INS has not challenged the Secretary of Labor's findings about conditions in the domestic labor market. Thus, on the view that a labor certification only binds the INS as to the availability of qualified United States workers and the impact of the alien's employment on the domestic market, there has been no invalidation here and the prohibition of section 656.30(d) is inapplicable.

The denial of the preliminary injunction is

AFFIRMED.

---

5. With respect to the division of authority between DOL and INS, we agree with the District of Columbia Circuit in concluding that Congress did not intend DOL to have primary authority to make the individual qualification determination. *Madany v. William French Smith, et al.,* 696 F.2d 1008, 1011–13 (D.C.Cir.1983)