**UNITED STATES of America, Plaintiff,**

v.

**Kenneth Moses LOUD HAWK, et al., Defendants.**

**CR No. 75–296–RE.**

United States District Court, D. Oregon.

May 20, 1983.

---

Charles H. Turner, U.S. Atty., Kenneth C. Bauman, Asst. U.S. Atty., Portland, Or., for plaintiff.

Kenneth S. Stern, Michael Rose, Rose & Stern, Milwaukie, Or., Ronald P. Schiffman, Tolavana Park, Or., Michael Bailey, Portland, Or., S. Lynn Parkinson, Tom Steenson, Ed Jones, Parkinson & Steenson, Oregon City, Or., for defendants.

OPINION

REDDEN, District Judge:

Defendants Kenneth Loud Hawk, Russ James Redner, Dennis Banks, and KaMook Banks move to dismiss this action on the grounds that their Sixth Amendment right to a speedy trial has been violated. For the reasons set forth below, I grant defendants' motion and dismiss this action with prejudice.

I. *Background*

The facts leading to the arrest and ultimate indictment of the defendants in this case are fully set forth in *United States v. Loud Hawk,* 628 F.2d 1139 (9th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980). Therefore, only a brief recitation of those facts is necessary here.

Defendants Loud Hawk, Redner, and KaMook Banks were arrested by Oregon state police officers on November 14, 1975. These officers impounded the vehicles the defendants were driving and on November 15, 1975 searched the vehicles pursuant to a search warrant. The search disclosed firearms, ammunition, an electric blasting cap, a large quantity of non-electric blasting caps, and material thought by state police

to be dynamite. State authorities, without notice to the defendants, destroyed the alleged explosive material on November 16, 1975.

A federal grand jury returned a ten count indictment against defendants Loud Hawk, Redner, KaMook Banks, Dennis Banks,[1] and two other individuals on November 25, 1975, charging all defendants with one count of possession of an unregistered destructive device, eight counts of possession of firearms whose serial numbers had been removed, and charging Dennis Banks alone with one count of being a felon in possession of firearms. On December 22, 1975, a five count superceding indictment was filed. Two days later defendants filed a motion seeking dismissal of the indictment, or alternatively, suppression of any and all evidence relating to the destroyed dynamite. They argued that the destruction of the evidence constituted a denial of due process since there was no opportunity for defense analysis of the material and the evidence was destroyed before defendants had any chance to object or suggest alternatives.

On March 30, 1976, Judge Belloni granted this motion to suppress. He reasoned that destruction of the dynamite prejudiced defendants because "their inability to observe the destruction and to analyze samples of it deprived them of the opportunity to contest the government's conclusion that the substance destroyed was indeed explosive." He also found that defendants were prejudiced because destruction of the packaging material foreclosed the defense from determining by fingerprint analysis who had handled the boxes.

The government filed its notice of appeal from this order on April 19, 1976. At the same time, the government requested a continuance of the trial date of May 12, 1976, pending resolution of the interlocutory appeal. The government argued that the suppressed evidence was highly relevant to the firearms counts which were to be tried on May 12. Judge Belloni denied the motion for continuance on April 20, 1976. On April 23, 1976, the government moved the Court of Appeals for an order continuing the May 12 trial date. The government based its motion on the same grounds rejected by Judge Belloni. The Court of Appeals also denied the motion for continuance.

At a status conference on April 26, 1976, the government informed Judge Belloni that it would not proceed to trial on the firearms counts. When the case was called for trial on May 12, 1976, the government answered that it was not ready to proceed. All defendants answered that they were ready for trial. In fact, the defendants demanded that trial proceed or that the court dismiss the case with prejudice pursuant to Fed.R.Crim.P. 48(b). They argued that their rights under the Speedy Trial Act and the Constitution had been violated.

In response to the motion to dismiss, Judge Belloni stated:

I think everyone here realizes that this case will be dismissed against these defendants. Both this Court and the Court of Appeals has denied any postponement. I am ready to try this case commencing today. Both parties have had ample time to prepare. The defendants are ready to go to trial. For some reason, which I do not understand, the Government is not, even though two of the counts are not even concerned with the subject of previously suppressed evidence. I do not want to dismiss this case without a trial. The factual and legal dispute should be heard and decided, but there is no way the Court can force the Government to call its witnesses. My only recourse is to dismiss this case against these four defendants.

Clearly, there has been unnecessary delay in bringing these four defendants to trial. Clearly it is the fault of the Government.

Transcript of Proceedings, May 12, 1976, at 4–5. The government admitted that it

---

1. Defendant Dennis Banks was a fugitive until his arrest in California. He made his first appearance on April 13, 1976.

could have tried the firearms counts without the suppressed evidence. Indeed, the government stated that if the Court of Appeals affirmed the suppression order, it would proceed to trial on the firearms counts. Transcript of Proceedings, May 12, 1976, at 15–16. Judge Belloni, pursuant to Fed.R.Crim.P. 48(b), dismissed the indictment with prejudice.

The government filed its notice of appeal from the dismissal in open court on May 12, 1976.[2] Transcript of Proceedings, May 12, 1976, at 12. On June 11, 1976, the appeals of the suppression order and the order dismissing the indictment were consolidated. The appeals were submitted to a panel of the Ninth Circuit on October 15, 1976. On July 26, 1977, the panel affirmed Judge Belloni's orders. The government petitioned for reconsideration *en banc* on September 7, 1977. The Court granted the government's petition on October 17, 1977.

On March 6, 1978, the Court *en banc* temporarily remanded to the district court for an evidentiary hearing. Judge Belloni held this hearing on May 9 and 10, 1978. At the end of the hearing, Judge Belloni ordered the parties to file proposed findings within two weeks. On June 16, 1978, Judge Belloni granted the government's motion to extend the filing date to July 14, 1978. The record does not indicate the reason why, but the parties did not file their proposed findings until August 1, 1978. Judge Belloni issued findings on the factual issues on August 23, 1978.[3] On August 7, 1979, the Ninth Circuit *en banc* reversed the suppression order and the dismissal of the firearms counts of the indictment to the extent that the dismissal was with prejudice. *Loud Hawk, supra,* 628 F.2d 1139. The Court held that dismissal of the firearms counts was proper, but held that the court had

failed to give the government the requisite "forewarning ... that dismissal with prejudice will result from a failure to proceed to trial." *Id.* at 1150. The Court of Appeals remanded with instructions to deny the motion to suppress, to reinstate the indictment, and to reconsider the dismissal with prejudice of the non-dynamite counts. After petitions for rehearing and certiorari were denied, the mandate issued on March 12, 1980.[4]

Upon remand, the case was assigned to me. I ruled that the firearms counts could not simply be reinstated. Therefore, the government obtained a superceding indictment from the Grand Jury on June 18, 1980. This indictment recharged defendants with the original firearms count and two of the three original destructive device counts. The new indictment recharged Dennis Banks with being a felon in possession of firearms. The superceding indictment also charged all defendants with two new destructive device counts and charged Ka-Mook Banks with a new count of receiving firearms while under indictment for a felony.

This new indictment prompted motions to dismiss for vindictive prosecution. On August 8, 1980, I dismissed the superceding indictment as to KaMook Banks on the grounds of vindictive prosecution. I denied similar motions on behalf of the other defendants. In August 1980, defendants Loud Hawk, Redner, and Dennis Banks appealed the denial of their motions to dismiss for vindictive prosecution. On September 2, 1980, the government appealed the dismissal as to KaMook Banks. The appeals were consolidated in September 1980 and submitted to a panel of the Ninth Circuit in November 1980.

2. It is interesting to note that, while the Court of Appeals held that the government did not have adequate notice that the indictment would be dismissed, the government had already prepared a notice of appeal which it immediately presented to the trial court in the presence of the defendants.

3. During the time this case was on temporary remand, the District of Oregon was entitled to

five trial judges. Until 1980, however, the District of Oregon had only three trial judges. In 1980, two additional district court judges were appointed.

4. At the time the Court of Appeals issued the mandate, four years, three months and 16 days had passed from the date of the indictment.

On July 29, 1982, a panel of the Ninth Circuit dismissed the appeals of Redner, Loud Hawk, and Dennis Banks for lack of jurisdiction on the grounds that the denial of a motion to dismiss for vindictive prosecution was not an appealable order.[5] The Court vacated the dismissal of Counts I through V of the indictment as to KaMook Banks. The Ninth Circuit issued the mandate on January 31, 1983.[6]

By minute order on February 25, 1983, trial was set to commence on April 11, 1983. At the request of the government, and over objections by the defendants, I continued the trial date to May 3, 1983. On the court's own motion, trial was continued from May 3, 1983 to May 23, 1983 and finally set to begin on June 13, 1983. Defendants objected to each continuance.

## II. *Discussion*

The government contends that this case presents issues of delay encompassing both the Fifth Amendment Due Process Clause and the Sixth Amendment Speedy Trial Clause. The government claims that the approximately four year period between the dismissal on March 12, 1976 and the return of the mandate—which reinstated the indictments—on May 17, 1980 should be scrutinized under the Due Process Clause. Likewise, for KaMook Banks, the government argues that the period between her second dismissal on August 8, 1980 and the return of the mandate vacating that dismissal on January 31, 1983 must be considered under the Due Process Clause.

The defendants contend that the entire period of delay from the date of the indictment to the date of trial, approximately seven years and seven months, must be analyzed under the Speedy Trial Clause.

 The Speedy Trial Clause of the Sixth Amendment only applies when a defendant is "accused." *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). The right to a speedy trial "attaches only when a formal criminal charge is instituted and a criminal prosecution begins." *Id.* A defendant is "accused" for Speedy Trial Clause purposes when he or she has been arrested, indicted, or is otherwise the subject of a criminal prosecution. *Id.*

The United States Supreme Court held in *MacDonald* that "the Speedy Trial Clause has no application after the Government, in good faith, formally drops charges." *Id.* The Court, however, was not faced with, and did not decide, the situation at issue here: whether a person is "accused" during the time a court's dismissal of the indictment, on defendants' motion, is on appeal.

 I conclude that the *MacDonald* rationale does not extend to dismissals which are not voluntary by the government. I find that a person is "accused" even after a court dismisses the indictment if the government appeals the dismissal. This is because, on appeal, the dismissal may be reversed and the indictment reinstated. A person remains under prosecution unless and until the court on appeal affirms the dismissal. *See United States v. Bishton*, 463 F.2d 887, 891 (D.C.Cir.1972) (prosecution ended only upon affirmance of dismissal by court of appeals).

 The Court in *MacDonald* noted that its conclusion agreed with the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174. *Unit-*

---

5. On March 6, 1980, a panel of the Ninth Circuit held that an order denying a defendant's motion to dismiss on the grounds of vindictive prosecution was immediately appealable as a final decision under 28 U.S.C. § 1291. *United States v. Griffin*, 617 F.2d 1342 (9th Cir.), *cert. denied,* 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980). This holding was subsequently reversed by the United States Supreme Court in *United States v. Hollywood Motor Car Co., Inc.,* —— U.S. ——, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) (*per curiam*). The Ninth Circuit panel then dismissed the appeals of Loud Hawk, Redner, and Dennis Banks based on *Hollywood Motor Car Co. United States v. Banks,* 682 F.2d 841, 844 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 755, 74 L.Ed.2d 972 (1983).

6. When the mandate from the second appeal was received, seven years, two months and six days had passed from the date of the indictment.

ed States v. MacDonald, supra, 456 U.S. at 7 n. 7, 102 S.Ct. at 1501 n. 7. It noted that the Act specifically provides that if charges are dismissed by the government and later refiled, the period between the dismissal and refiling is not included in computing the time within which trial must begin. 18 U.S.C. § 3161(h)(6). My conclusion also comports with the Speedy Trial Act. The Act, while recognizing that dismissals may occur upon a defendant's motion, does not provide that excludable delay occurs from the date of dismissal to reinstatement of the indictment on appeal. Rather, the Act allows excludable delay only if the indictment is dismissed "upon motion of the attorney for the Government . . . ." *Id.*

The fundamental difference between a dismissal by the court and a voluntary dismissal by the government is also shown by Fed.R.Crim.P. 48. Rule 48(a) provides that the prosecution of a defendant terminates upon dismissal by the government. The Rule does not provide, however, that the prosecution terminates upon dismissal by the court for unnecessary delay. The logical inference from the difference in language between the two subsections of Rule 48 is that a prosecution does not necessarily terminate upon dismissal by the court.

In this case, there has been but one prosecution during these past seven years. Almost immediately after Judge Belloni issued his order dismissing the indictment on May 12, 1976, the government handed the Judge its notice of appeal from that dismissal. The defendants, who were in court when the United States Attorney handed the Judge the notice of appeal, knew that the dismissal could be overturned on appeal. During the almost four years the case was

on the first appeal, the defendants suffered the anxiety of knowing that the dismissal could be reversed at any time and the indictment reinstated. They were not in the same position as a person whose indictment is voluntarily dismissed by the government. As to that person, the government must go before another Grand Jury if it ever wishes to reindict him or her. As to these defendants, the indictment was merely held in abeyance. In fact, after the first appeal, the Court of Appeals reinstated the dynamite counts of the indictment and ordered reconsideration of the dismissal of the non-dynamite counts. Upon remand, I concluded that the non-dynamite counts could not simply be reinstated. The government then obtained a superceding indictment from the Grand Jury, recharging the defendants with the original firearms count and two of the three original destructive device counts, along with other new counts. On the second appeal, the Court of Appeals *vacated* the dismissal of Counts I through V as to KaMook Banks. Thus, as to KaMook Banks it is as if the second dismissal never occurred. The government cannot argue that she was not "accused" during the pendency of the second appeal. On the second appeal, the indictment had not been dismissed as to Loud Hawk, Redner, and Dennis Banks. They, therefore, also remained "accused" during the pendency of the second appeal.

In summary, I conclude that the entire time between arrest or indictment of the defendants in this case and the time now set for trial must be analyzed under the Sixth Amendment Speedy Trial Clause rather than under the more stringent standard of the Due Process Clause.[7] These

---

**7.** Where the delay occurs before indictment or during a time when the defendant is not considered "accused" for purposes of the Speedy Trial Clause, any delay is evaluated under the Due Process Clause and the defendant bears a heavier burden to establish a constitutional violation. *United States v. Henry*, 615 F.2d 1223, 1232 (9th Cir.1980). Pre-accusation delay is permissible "unless it violates 'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" *Id.* Under the Due Process analysis, the court must

consider the reasons for the delay as well as the prejudice to the defendant. Affirmative proof of actual prejudice is necessary under the Due Process analysis. An affirmative showing of actual prejudice is not necessary, however, to prove a Speedy Trial Clause violation. *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973); *United States v. Henry, supra,* 615 F.2d at 1232 n. 12. Under the Due Process analysis, the defendant's proof of actual prejudice must be "definite and not speculative." *Arnold v. McCarthy,* 566 F.2d

defendants have been under indictment from November 25, 1975 to the present.

The United States Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), enunciated the test for determining whether a defendant's Sixth Amendment right to a speedy trial has been violated:

> The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed. A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.
>
> ... We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Id.* at 530 and 533, 92 S.Ct. at 2192 and 2193 (footnotes omitted).

Defendants argue that the delay in this case of seven years and seven months vio-

lates the Speedy Trial Clause as a matter of law. I decline to so rule; rather I examine this case in light of the four factors enunciated in *Barker.* I conclude that, in the circumstances of this case, the defendants' rights under the Speedy Trial Clause of the Sixth Amendment have been violated.

### A. *Length of the Delay*

The delay from indictment to the time this case will come to trial is seven years, six months, and 19 days. The government argues that I should exclude the period of six years and three months when this case was on appeal. The government notes that this time period would be excludable under the Speedy Trial Act, 18 U.S.C. § 3161(h)(1)(E). It cites a Fifth Circuit Court of Appeals opinion in support of its argument that the delay while the case was on interlocutory appeal should not be included in determining the length of delay for Speedy Trial Clause purposes. *United States v. Herman,* 576 F.2d 1139 (5th Cir. 1978). *Herman,* however, does not support the government's position. In *Herman,* the Fifth Circuit merely held that "[a]n interlocutory appeal by the government is generally a valid reason that justifies an appropriate delay." *Id.* at 1146. The court noted that "delays to seek interlocutory appeals may not be justified in every case ...." *Id.* at 1147.

I follow the Fifth Circuit's analysis. I hold that the proper analysis is to include delay occasioned by interlocutory appeals in the computation of the length of the delay. The fact that the delay occurred because of interlocutory appeals can be accounted for when analyzing the reasons for the delay. This conclusion is in accord with Ninth Circuit precedent. *See United States v. Osuna-Sanchez,* 446 F.2d 566, 567 (9th Cir.1971),

---

1377, 1384 (9th Cir.1978). The focus in the Due Process analysis is on the nature of the actual prejudice caused by the delay and the legitimacy of the asserted governmental reasons for the delay. *Id.* at 1384 n. 1.

I conclude that, even if the government is correct and the stricter Due Process standard applies to part of the delay in this case, defendants' constitutional rights have been violated.

While the case presents a closer question when analyzed solely under the Due Process Clause, I would still dismiss. As noted *infra,* the governmental reasons for the delay do not absolve the government of its duty to bring these defendants to trial in a timely fashion. Also, as noted *infra,* I find the defendants have made an affirmative showing of actual prejudice which is "definite and not speculative." *Id.* at 1384.

*cert. denied,* 404 U.S. 1022, 92 S.Ct. 698, 30 L.Ed.2d 672 (1972) (six month delay justified).

 The length of delay is a triggering device. *Barker, supra,* 407 U.S. at 530, 92 S.Ct. at 2192. There is no set amount of delay which is presumptively prejudicial; the length of delay necessary to invoke Speedy Trial Clause inquiry depends upon the peculiar circumstances of each case. *Id.* at 531, 92 S.Ct. at 2192. In this case, the ninety-one month delay between indictment and trial is sufficient to trigger scrutiny under the Sixth Amendment.

### B. *Reasons for the Delay*

The government bears the burden of justifying the delay. *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192. The parties agree that a major portion of the delay in this case is due to the two interlocutory appeals. The government attempts to justify the delay incurred on the first appeal by noting the "complexity of the issues raised, the en banc hearing ..., the necessity for a remand for an evidentiary hearing and the fact that defendants exhausted every possible avenue on appeal." [8] These arguments, however, do not justify the length of the delay occasioned by the first appeal. The Ninth Circuit, *en banc,* held that the delay for interlocutory appeal of the explosives count could not be deemed unnecessary for purposes of Fed.R.Crim.P. 48(b). The Court, however, did hold that

> [the government's] appeal of the suppression order as it relates to the nondynamite counts was improper and delay in prosecution occasioned by this appeal has been unnecessary under Rule 48(b).

*United States v. Loud Hawk, supra,* 628 F.2d at 1150. Since the appeal was improper, the delay is not justifiable and weighs against the government. *See, Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192; *United States v. Herman, supra,* 576 F.2d at 1146.

 The government does not address the twenty-nine month delay occasioned by the second appeal. The length of this delay is troubling since this appeal, like the first appeal, was on an expedited basis. The length of the delay is also troubling because it comes on the heels of the four year delay occasioned by the first appeal. To state that the delay was the result of appellate review does not absolve the government of the duty under the Sixth Amendment to give these defendants a speedy trial. The federal government as a whole—executive, judicial, and legislative—is governed by the strictures of the Speedy Trial Clause. All three branches of government have a duty to insure that rights of criminal defendants to speedy trials are not abrogated. *Dickey v. Florida,* 398 U.S. 30, 51, 90 S.Ct. 1564, 1575, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring).[9] The twenty-nine month delay also weighs against the government, since "the ultimate responsibility for [delays occasioned by crowded courts] must rest with the government rather than the defendant." *Barker, supra,* 407 U.S. at 531, 92 S.Ct. at 2192. *See Brown v. Wolff,* 706 F.2d 902 at 906 (9th Cir.1983) (crowded docket not good cause for continuance of Interstate Agreement on Detainers case).

 The government argues that the time this case has been pending before this court—approximately fifteen months—

---

8. While the government asserts that the delay should be attributed to the defendants because "they exhausted every possible avenue on appeal," I note that it was the government which petitioned for rehearing *en banc,* not the defendants.

9. I note that during the first appeal in this case, the Ninth Circuit Court of Appeals was understaffed by thirteen judges. This understaffing necessarily led to delays and a backlog of cases on appeal. This backlog has been remedied by the appointment of thirteen new judges. Ap-

peals before the Ninth Circuit are now current. While the delay in the two interlocutory appeals can be labeled the fault of Congress for not fully staffing the Ninth Circuit sooner, the delay must still weigh against the government. As Justice Brennan noted in *Dickey,* 398 U.S. at 52 n. 18, 90 S.Ct. at 1577 n. 18: "If the legislature were to refuse to install sufficient judicial machinery to perform judicial tasks, it might be necessary to turn some accused persons loose." (*Quoting King v. United States,* 265 F.2d 567, 569 (D.C.Cir.1959)).

must be attributed to the defendants. The government points to the "phrenetic motion practice" of the defendants' attorneys. The record does reflect that defendants have filed numerous pretrial motions. Nonetheless, of the motions filed, several were well taken and raised important issues. Furthermore, even if all the delay before this court is attributed to the defendants, there still exists the unjustified delay of six years and three months.

#### C. Defendants' Assertion of Their Rights

■ Defendants moved for dismissal of the indictment on the grounds of unnecessary delay as early as May 12, 1976. Upon remand after the first appeal, defendants moved for dismissal on the grounds of unnecessary delay and for denial of their Sixth Amendment right to a speedy trial. After the second appeal, defendants again moved to dismiss on the grounds of undue delay. Since the last remand, defendants have objected to every continuance of the trial date. I find that defendants have asserted their speedy trial rights. Their assertions of their rights "is entitled to strong evidentiary weight in determining whether the defendant[s are] being deprived of the right." *Barker, supra,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93.

#### D. Prejudice to the Defendants

An affirmative showing of actual prejudice is not necessary to prove a Speedy Trial Clause violation. *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973); *United States v. Henry,* 615 F.2d 1223, 1232 n. 12 (9th Cir.1980). The Supreme Court in *Barker* held that prejudice should be assessed in light of the interests the Speedy Trial Clause protects:

> This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to

limit the possibility that the defense will be impaired .... If witnesses die or disappear during a delay, the prejudice will be obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. ... Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

*Barker, supra,* 407 U.S. at 532 and 533, 92 S.Ct. at 2193.

■ Defendants have made a sufficient showing of prejudice. It is true that defendants have not been incarcerated for the past seven years. Nonetheless, defendants Redner and Loud Hawk did spend eighty-seven days in custody and KaMook Banks spent ninety-nine days in custody. The record reflects that Dennis Banks was briefly in custody, but it does not reflect the length of his incarceration. Defendants concede that the length of time each of them has spent in custody is not excessive. Nonetheless, the length of time each defendant has lived with these unresolved criminal charges—over seven and one-half years—is excessive. The Supreme Court has consistently noted the substantial nature of this type of prejudice. *MacDonald, supra,* 456 U.S. at 8–9, 102 S.Ct. at 1502; *Barker, supra,* 407 U.S. at 533, 92 S.Ct. at 2193; *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971).

The defendants have also shown that the delay has impaired their ability to defend themselves. By affidavit they have shown that a number of defense witnesses have died. The affidavits of defendants' attorneys show that these witnesses would have testified favorably for the defendants.[10] Also, one of the original codefendants, Anna Mae Aquash, has also died.

> While it is true ... that the record does not indicate whether the testimony of

---

10. The affidavit of S. Lynn Parkinson, attorney for defendant Redner, was submitted *in camera.* The government requested access to this affidavit in order to rebut the claim of actual prejudice. The affidavit records Redner's theo-

ry of the defense without setting forth any factual allegations which the government could refute. Therefore, at the request of the defendant, I did not reveal this affidavit to the government.

this witness would have been helpful, or even available to the [defendants, I] cannot gainsay that it would not have been. Certainly the death of a witness with firsthand knowledge of the events at issue creates the strong possibility of prejudice to a defendant.

*United States v. Macino,* 486 F.2d 750, 754 (7th Cir.1973). Defendants have also shown through the affidavit of their investigator that at least two witnesses have no independent recollection of the events of November 1975. Affidavit of Donald K. Grant.

I conclude that defendants have shown not only the possibility of prejudice stemming from the delay, they have established actual prejudice which is "definite and not speculative." *Arnold v. McCarthy,* 566 F.2d 1377, 1384 (9th Cir.1978). As such, defendants' proof of prejudice even meets the more stringent requirements under the Due Process Clause analysis.

III. *Conclusion*

In light of the above, I find that the four *Barker* factors, when weighed together, compel the conclusion that these defendants' Sixth Amendment right to a speedy trial has been violated. The extreme length of the delay coupled with the actual prejudice shown and the lack of any articulated justifiable reason for the delay mandate that the indictment against these defendants be dismissed. I note that this case, like all Speedy Trial Clause cases, is *sui generis* and my decision rests on the peculiar circumstances of this case. As indicated earlier, the government insists that most of the delay in this case must be examined under the Due Process Clause which requires a finding of definite and not speculative prejudice. Although I disagree with the government that the Due Process test applies, even when the delay is so tested I conclude that dismissal is proper. The indictment is dismissed with prejudice as to all defendants.