HI–HAT RESTAURANT, INC., an
Oregon corporation, and Sik On
To, Plaintiffs,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Defendant.

Civ. No. 82–1115.

United States District Court,
D. Oregon.

Aug. 29, 1983.

Gerald H. Robinson, Portland, Or., for plaintiffs.

Laury H. Hennings, Asst. U.S. Atty., Portland, Or., for defendant.

## OPINION

REDDEN, District Judge:

Plaintiffs Hi-Hat Restaurant and Sik On To appeal from final decisions of the Regional Commissioner of the Immigration and Naturalization Service (INS), which denied To's petition for sixth-preference visa

status and denied reconsideration of that ruling. Although I affirm the INS decision as to certain issues, I nevertheless find that To is entitled to the relief he requests, and I remand to the INS for the granting of the sixth-preference petition.

FACTS

Plaintiff entered the United States on a non-immigrant visitor's visa in December of 1973. He overstayed that visa and subsequently sought employment. In early 1974, he began work for the Hi-Hat chinese restaurant in Portland, as a specialty cook. On May 2, 1974, plaintiffs Hi-Hat and To applied for a certificate from the Department of Labor (DOL), certifying that there were insufficient Chinese specialty cooks in the American labor force to meet employer demand, and that To's employment would not take work from Americans who had entered the country previously. The DOL granted the petition on May 21, 1974. Armed with the DOL certificate which is a prerequisite to the granting of sixth-preference status, To and the Hi-Hat then sought sixth-preference status for To. Sixth-preference status is a special category of visa petitions, established to give priority of entrance into the United States to laborers who have specialized skills which are in demand in the United States. A final decision of the Regional Commissioner denying the petition issued May 28, 1982, as affirmed by denials of reconsideration issued August 2, 1982 and July 22, 1983, is the subject of this appeal.

There are also separate and parallel proceedings pending before an Immigration Judge in Seattle. Although these proceedings are not the subject of this appeal proper, they have some relevance to an understanding of this case and will be briefly summarized.

To applied for adjustment of status in deportation proceedings before an Immigration Judge, the Hon. Newton T. Jones, in Seattle. In May of 1975, To had filed for *non*-preference status, arguing that, quite apart from his preference status, he was entitled to a non-preference visa number. There were such numbers available at the time of To's application, though not at the time the INS took action on the application. To's application was denied on the basis of a current lack of non-preference visa numbers. To appealed to the Board of Immigration Appeals (BIA), which affirmed. To appealed from the BIA to the Ninth Circuit. During the pendency of that appeal, the BIA reconsidered its prior policy and ruled that cases such as To's could be given visa numbers if such were available at the time of the application. The Ninth Circuit remanded to the BIA for reconsideration of To's case in light of this change of law in the interim. *Sik On To v. U.S.I.N.S.*, No. 77–3427 (9th Cir. June 28, 1978) (unpublished). The BIA in turn remanded To's case to the Immigration Judge for a decision. After a hearing on June 18, 1980, the Immigration Judge reserved decision under INS Operation Instructions 245.4(a)(6), apparently on the grounds that the only obstacle to the granting of To's petition was a continued unavailability of visa numbers. The Immigration Judge's reserving of decision prevents To's deportation, and when visa numbers again become available as a result of reduction of the pending backlog, To's application will apparently be granted by the Immigration Judge. Decision has been reserved in that case for the past thirty-eight (38) months.[1]

Meanwhile, in the present action To argues that he is entitled in any event to a preference for specialized labor skills. The District Director ruled otherwise and the Regional Commissioner affirmed.

---

1. If To's petition had been granted in 1975 when it was made, rather than taking a stormy and convoluted course through the INS, BIA, and the Ninth Circuit, To would have been a legal resident for the past eight years, could have received visits from his family (from which he has been separated for ten years) and probably would have become a United States citizen by now. Although this court is not unacquainted with other cases in which litigants were prejudiced by administrative and appellate delay, the present case illustrates a Kafkaesque extension of the principle. *Cf. United States v. Loud Hawk,* 564 F.Supp. 691 (D.Or.1983).

## STANDARD OF REVIEW

■ Judicial review of the denial of a visa preference petition is for "abuse of discretion." *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir.1971). An abuse of discretion occurs when the decision is not supported by the evidence, or when the decision is based upon an incorrect legal standard. *Id.; Loza-Bedoya v. INS,* 410 F.2d 343, 346 (9th Cir.1969) (Decision to be affirmed if supported by *any* evidence); *Pizarro v. District Director,* 415 F.2d 481, 483 (9th Cir.1969) (Decision must be affirmed if supported by *substantial* evidence); *Kaliski v. District Director,* 620 F.2d 214, 216 and n. 1 (9th Cir.1980) (INS reversed because incorrect legal standard applied to uncontested facts). In the present case I affirm the INS' decision on certain contested facts, but find that an incorrect legal standard was applied and that reversal is required. *Id.*

## DISCUSSION

■ To's first argument is that the action of the DOL in approving his petition for labor certification requires that the INS grant the visa preference requested. Although I understand this argument, I reject it on the authority of *K.R.K. Irvine, Inc. v. Landon,* 699 F.2d 1006, 1008–9 (9th Cir. 1983). As interpreted by the Ninth Circuit, the relevant statutes require that the DOL determine whether a given job category is or is not sufficiently filled by United States residents, and the INS then determines whether a specific alien has the qualifications for that job. That is what occurred here. The DOL certificate does not estop the INS from inquiring into To's qualifications.

■ To's next argument is that he does in fact have the qualifications for the "Chinese specialty cook" category, which is employment in that job for two years. To argues, first, that he gained many years' experience in this field in Hong Kong. The INS ruled to the contrary, and discounted To's alleged Hong Kong experience. I examine this decision to determine whether it was supported by substantial evidence.

The decision as to Hong Kong experience was supported by substantial evidence, viewing the record as a whole. To presented the live testimony of his former employer at a restaurant in Hong Kong, who testified that To had worked for her for the requisite period. The INS presented evidence that To had worked full time as a tailor's apprentice during this period, and the INS also presented evidence from the husband of To's employer to the effect that To had not worked at the restaurant run by himself and his wife. This witness subsequently retracted his affidavit, which had in turn retracted a previous statement in To's favor. There were apparently *two* restaurants owned by the employers in Hong Kong, both bearing names which are translated for present purposes as "Lucky Cafe," and this may be part of the source of the confusion. In any event the evidence as to whether To worked as a cook or as a tailor was in sharp conflict. There was evidence, and indeed substantial evidence, in favor of either conclusion. The INS decision must be affirmed as to lack of experience in Hong Kong prior to 1973.

Finally, however, To argues that it is undisputed that he *now* has the requisite experience, and has had since 1976, since it is undisputed that he worked as a cook at Hi-Hat from May, 1974 to the present. The INS appears to agree that To is qualified and has been since 1976, although the INS argues that it would be unfair to grant a priority date of 1974 to To when he did not become qualified until 1976. *See Matter of Wing's Tea House,* 16 I & N Dec. 158 (R.C. 1977). The INS then argues that, since a 1974 date cannot be fairly granted, the visa petition must be denied in its entirety. The INS does, however, agree that To is presently qualified and is willing to grant him an August, 1982 priority date, based upon *another* DOL certificate which To secured. The problem with this solution to the problem is that visa numbers have been unavailable for sixth-preference petitions since *January* of 1982, and that backlog has not moved over the past year. If and when (perhaps at the end of the current fiscal year) the priority date moves past August

1982, the INS will apparently grant the visa petition.

To argues that the INS' denial of *any* pre-1982 date, when he concededly held the requisite experience at the latest by May, 1976, constitutes an incorrect legal standard requiring reversal. *Kaliski v. District Director, supra,* 620 F.2d at 216.

I agree with To and remand the case to the INS for further action. As an initial matter I agree with the Regional Commissioner and the District Director that the principle of *Wing's Tea House, supra,* requires that an alien not receive a priority date for a period when he or she is not qualified. Such would put other alien applicants at an unfair disadvantage, since all are "competing" for the same pool of visa numbers. The petitioner cannot avail himself or herself of a 1974 priority date when the INS investigation discloses that the alien may not have been qualified until 1976. On the other hand, the petitioner is not required by law or *Wing's Tea House* to wait until a 1982 priority date is available, if the petitioner was qualified in 1976. Petitioner here filed for his visa preference in 1978 and concededly had at least two years' experience as of that date. Petitioner alleged a *1974* priority date and the INS's decision that he is not entitled to that date is supported by substantial evidence. However, it is also uncontested that, quite apart from the evidentiary dispute over experience in Hong Kong, petitioner was qualified in 1976, two years before his petition was filed. The INS should, therefore, have granted the petition, subject to a May 21, 1976, priority date.[2]

This result is fully consistent with the principle of *Wing's Tea House, supra,* with the Ninth Circuit's decision in *K.R.K. Irvine, Inc., supra,* and most especially is mandated by the relevant portions of the Act, 8 U.S.C. § 1153(a)(6) and 8 U.S.C. § 1154(b). I fully agree with *Wing's Tea*

*House* in its specific holding that a petitioner is not entitled to a priority date *until* he or she is qualified. That date in the present case was, it is undisputed, 1976. The INS is required by Section 204(b) of the Act, 8 U.S.C. § 1154(b), to conduct an investigation to determine whether the petitioner "is" eligible for the preference. *See K.R.K. Irvine, Inc., supra,* 699 F.2d at 1008. It is undisputed that, quite apart from the contested Hong Kong experience, the petitioner was qualified in 1976 and in 1978 when the petition was filed.

In light of this ruling I will remand the case to the Regional Commissioner for further action upon the visa preference petitions of 1978 and/or 1983. The Regional Commissioner or his representative should grant, as to either petition, a priority date of May 21, 1976.

---

**2.** In the context of this case, *any* priority date prior to January, 1982, will result in the granting of To's petition. The date of May 21, 1976, is the date which is most consistent with the purpose of the Act. It is uncontested that the petitioner was qualified by this date, and the use of a date exactly two years from the granting of the DOL certificate, which is a matter of public record, will allow a "date certain" for the establishment of priorities among other petitioners.