**TONGATAPU WOODCRAFT HAWAII, LTD., Plaintiff-Appellee,**

v.

**Sam I. FELDMAN,\* District Director, Immigration and Naturalization Service; et al., Defendants-Appellants.**

**No. 83–1826.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 12, 1983.

Submission Withdrawn May 4, 1984.

Resubmitted July 3, 1984.

Decided July 3, 1984.

\* Mr. Feldman's name is substituted under Fed.R. App.P. 43(c)(1).

William Thompson, III, Honolulu, Hawaii, for plaintiff-appellee.

R. Michael Burke, Asst. U.S. Atty., Honolulu, Hawaii, for defendants-appellants.

Before WRIGHT, CHOY, and POOLE, Circuit Judges.

CHOY, Circuit Judge:

Tongatapu Woodcraft Hawaii, Ltd. (Tongatapu) employs woodcarvers who dress in native garb and sell their wares to passing tourists. After failing to secure qualified workers domestically, Tongatapu applied to the Immigration and Naturalization Service

(INS or Service) to obtain sixth preference visas for two experienced woodcarvers from Tonga. The INS granted the petitions but later revoked them on the ground that Tongatapu made material misrepresentations in its certification to the Department of Labor. Tongatapu then brought a declaratory judgment action against the INS, seeking reinstatement of the petitions. The district court granted summary judgment for Tongatapu, holding that the INS action was arbitrary and capricious or constituted an abuse of discretion. INS now appeals, and we reverse and remand.

## I. BACKGROUND

Tongatapu is a very small Hawaii firm with the stated purpose of placing Tongan woodcarvers in areas with high tourist traffic, such as the International Market Place in Waikiki. Tongatapu expected its carvers to not only carve wood and sell the carvings but also to explain the carving technique and the cultural significance of the carvings to passersby.

Tongatapu employs Maake Molitoni and Viliami Veatupu, two Tongan brothers with eight years of woodcarving experience. Molitoni and Veatupu entered the United States as non-immigrant visitors in January 1980. They remained after their visitor permits expired that spring. In the summer of 1980, Tongatapu petitioned the INS for sixth preference visas, which are issued to "qualified immigrants who are capable of performing specified skilled or unskilled labor, not of a temporary or seasonal nature, for which a shortage of employable and willing persons exists in the United States." Immigration and Nationality Act § 203(a)(6), 8 U.S.C. § 1153(a)(6).

In the course of its application to the INS, Tongatapu in April 1981 obtained a certification from the Department of Labor stating that there were not sufficient domestic workers available to perform the woodcarving jobs and that the brothers' performance of those jobs would not adversely affect the wages and working conditions of similarly employed domestic workers. *See id.* § 212(a)(14), 8 U.S.C. § 1182(a)(14). In applying for that certifi-

cation, Tongatapu estimated annual net revenues of $50,000 and indicated that it would be paying the woodcarvers $5 per hour. Tongatapu also unsuccessfully attempted to recruit domestic applicants, using the procedures specified in 20 C.F.R. § 656.21.

In due course, in June 1981 the INS approved the visa petitions submitted on behalf of Molitoni and Veatupu. Those petitions were forwarded to the American consulate in Fiji, which has ultimate authority to grant visas, but no visas were ever issued.

In January 1982, an INS investigator filed a report on the petitions submitted by Tongatapu that concluded as follows:

> Investigation disclosed that TONGATAPU WOODCRAFT HAWAII, LTD., was created in order that 6th preference visa petitions could be submitted in behalf of SUBJECT MAAKE SOAKI MOLITONI and SUBJECT VILIAMI HAME VEATUPU. An on site inspection revealed information on SUBJECTS' visa petitions and labor certifications to be inaccurate. Examination of the corporation's records indicate a substantial loss since the corporation began. It would be impossible for the corporation to pay the wages indicated on [the labor certification application].

By letter dated March 10, 1982, the INS notified counsel for Tongatapu of the Service's intent to revoke the sixth preference visa petitions on the ground that "[Tongatapu] would be unable to meet the salary specifications of the certified job offers." The Service made that determination on the basis of rents paid by Tongatapu to International Market Place totalling $1724 over a five-month period, indicating annual revenue of $27,590 given that International Market Place's rent is 15% of gross sales.

After a hearing, the INS revoked Tongatapu's visa petitions on August 25, 1983. Prior to this date, Veatupu had already been deported to Fiji. He has not returned to the United States. As to Molitoni the appeal is moot. He has been granted permanent residence as the spouse

of a United States citizen and thus he no longer needs a sixth preference visa.

## II. ACTUAL FRAUD ON THE INS

■ In its brief, the Government asserts that Tongatapu consists of three people, two being the aliens in question and the third being Molitoni's wife, a Canadian national. It implies that Tongatapu was formed in order to defraud the INS. Had the Government proved this contention below, Molitoni and Veatupu would be deportable under section 212(a)(19), 8 U.S.C. § 1182(a)(19). *Castaneda-Gonzalez v. INS*, 564 F.2d 417, 425 (D.C.Cir.1977).

■ In the INS's letter of intent to revoke and in all administrative proceedings below, however, the sole ground asserted by the INS for revocation of the visa petitions was the financial condition of Tongatapu. A reviewing court must judge the propriety of an agency's actions solely on the grounds invoked by the agency. *Patel v. INS*, 638 F.2d 1199, 1201 (9th Cir.1980); *Castillo-Felix v. INS*, 601 F.2d 459, 462 n. 6 (9th Cir.1979); *see Federal Power Commission v. Texaco, Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974). We cannot uphold the Service's decision on this asserted ground.

## III. STANDARD OF REVIEW

The Government argues that the alien has the burden of proof in any administrative proceedings regarding visa status pursuant to § 291 of the Act, 8 U.S.C. § 1361, which reads:

> Whenever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa or such document, or is not subject to exclusion under any provision of this chapter, and, if an alien, that he is entitled to the nonimmigrant, quota immigrant, or nonquota immigrant status claimed, as the case may be.

■ It is important to note that a *visa petition* is not the same thing as a *visa*. An approved visa petition is merely a preliminary step in the visa application process. 1A Gordon & Rosenfeld, *Immigration Law and Procedure* § 3.5(j). It does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States. *Joseph v. Landon*, 679 F.2d 113, 115 (7th Cir.1982); *Amarante v. Rosenberg*, 326 F.2d 58, 61 (9th Cir.1964).

■ The INS may revoke an approved visa petition "at any time" when it finds "good and sufficient cause." § 205 of the Act, 8 U.S.C. § 1155; 8 C.F.R. § 205.3. Despite the burden that § 205 places on the Government, a proceeding to revoke a visa petition, like the petition itself, is a part of the application process and falls under § 291 of the Act, 8 U.S.C. § 1361. Thus, once the INS has produced some evidence to show cause for revoking the petition, the alien still bears the ultimate burden of proving eligibility. The alien's burden is not discharged until the visa is issued.

■ Under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), a court may set aside a determination of the INS as arbitrary, capricious, or an abuse of discretion. The determination must be made on the administrative record before the Service. *Navarro v. District Director*, 574 F.2d 379, 383 (7th Cir.), *cert. denied*, 439 U.S. 861, 99 S.Ct. 182, 58 L.Ed.2d 170 (1978). We have held it an abuse of discretion for the Service to act "if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Song Jook Suh v. Rosenberg*, 437 F.2d 1098, 1102 (9th Cir.1971), *quoted in Joseph v. Landon*, 679 F.2d 113, 116 (7th Cir.1982); *see Loza-Bedoya v. INS*, 410 F.2d 343, 346 (9th Cir.1969). The term "no evidence," however, cannot be read literally. *Digilab, Inc. v. Secretary of Labor*, 357 F.Supp. 941, 942 (D.Mass.1973) ("The term 'no evidence' as stated in [*Song Jook Suh*] cannot be interpreted to mean 'any' evidence, no matter how little."), *remanded on other grounds*, 495 F.2d 323 (1st

Cir.), *cert. denied,* 419 U.S. 840, 95 S.Ct. 70, 42 L.Ed.2d 67 (1974). It seems clear, then, that the Service retains at least the burden of producing substantial evidence supporting its determination. *See Kee Yiu Leong v. O'Shea,* 363 F.2d 426, 427–28 (9th Cir. 1966). Any less would read the "good and sufficient cause" requirement out of section 205.

## IV. FACTUAL SUPPORT REQUIRED TO SUSTAIN THE INS DECISION

We now address the issue of what evidence must be presented by the INS to sustain its decision to revoke the visa petitions on the ground that the petitioner company, Tongatapu, was not economically viable.

■ The approval of two federal agencies is necessary to obtain sixth preference visa status for "qualified immigrants who are capable of performing specified skilled or unskilled labor not of a temporary or seasonal nature for which a shortage of employable and willing persons exists in the United States," Immigration and Nationality Act, § 203(a)(6), 8 U.S.C. § 1153(a)(6). The Department of Labor ("DOL") must certify that insufficient domestic workers are available to perform the job and that the alien's performance of the job will not adversely affect the wages and working conditions of similarly employed domestic workers. *Id.* § 212(a)(14), 8 U.S.C. § 1182(a)(14). The INS then makes its own determination of the alien's entitlement to sixth preference status. *Id.* § 204(b), 8 U.S.C. § 1154(b). *See generally K.R.K. Irvine, Inc. v. Landon,* 699 F.2d 1006, 1008 (9th Cir.1983).

■ The INS, therefore, may make a de novo determination of whether the alien is in fact qualified to fill the certified job offer. The Service, however, is bound by the DOL's certification and may invalidate it only upon determining that it was procured through fraud or willful misrepresentation of a material fact, *K.R.K. Irvine,* 699 F.2d at 1009; *Madany v. Smith,* 696 F.2d 1008, 1012 (D.C.Cir.1983); *Castaneda-Gonzalez v. INS,* 564 F.2d 417, 424–25, 429

(D.C.Cir.1977); 20 C.F.R. §§ 656.-30(d), .31(d), or that the Secretary of Labor abused his discretion in issuing the certification, *Joseph v. Landon,* 679 F.2d 113, 116 (7th Cir.1982); *Singh v. Attorney General,* 510 F.Supp. 351, 356–57 (D.D.C.1980), *aff'd mem.,* 672 F.2d 894 (D.C.Cir.1981).

We must now decide whether the financial viability of the employer to pay the wage stated in the certification application is within the province of the INS or the DOL to determine.

According to the Act, the DOL must find that the alien's performance of the job in question will not adversely affect the wages and working conditions of similarly employed domestic workers before it issues the section 212(a)(14) certification. The DOL requires that the prospective employer's application clearly show that the alien will be paid a wage equal to or exceeding the prevailing wage, 20 C.F.R. § 656.-20(c)(2); that the wage is guaranteed rather than contingent, *see id.* § 656.20(c)(3); and, most importantly, that the employer is able to pay the wage, *id.* § 656.20(c)(1). The DOL, however, does not always investigate the information on the application. In most cases, unless the employer firm is new or there is some other reason to question its statements, the DOL takes the information at face value in determining whether to issue the certification.

■ In contrast, the INS has taken the position that the term "desiring and intending to employ" in section 204(a) of the Act, 8 U.S.C. § 1154(a), which speaks of who may file a petition for visa preference status, contemplates the INS evaluating the financial ability of the petitioning employer to meet the wage requirements of the certified job offer. *Matter of Great Wall,* 16 I. & N. Dec. 142, 145 (Regional Comm'r 1977); *Matter of Sonegawa,* 12 I. & N. Dec. 612, 614 (Regional Comm'r 1967).

In *Ubeda v. Palmer,* 539 F.Supp. 647, 649–50 (N.D.Ill.1982), *aff'd mem.,* 703 F.2d 571 (7th Cir.1983), the court concluded that the determination of a petitioning employer's financial viability is one to be made

solely by the INS and not the Secretary of Labor. In view of the agencies' current practice, which is given weight in determining the proper division of functions between the INS and the DOL, see *Madany v. Smith*, 696 F.2d 1008, 1012 (D.C.Cir. 1983), we conclude likewise. Accordingly, the determination made by the INS must be upheld if it is supported by substantial evidence.

 The Service argues that Tongatapu's application stated it would earn a *net* profit of $50,000 a year, but that Tongatapu could not show *gross* income in excess of $30,000. As the district court observed, the $50,000 figure must have been an estimate because Tongatapu had not yet begun to operate. The Service's evidence, however, at least raises a very serious doubt about Tongatapu's ability to pay the certified wages. Tongatapu has never come forward with evidence indicating that it in fact has paid the woodcarvers $5.00 per hour. We think the Service rationally could have concluded that Tongatapu's employees were not being paid the prevailing wage.

We are not unmindful of *La Madrid-Peraza v. INS*, 492 F.2d 1297 (9th Cir.1974), in which the INS determined that La Madrid-Peraza's application for a labor certificate materially misrepresented the wages she was to receive from her prospective job. The INS ordered her deported and we reversed, saying:

> Although the government offered ample evidence that the petitioner's application misstated the wages to be paid, there is no evidence in the record to show that the amount that she actually received was below the prevailing wage ....

*Id.* at 1298. As the district court here observed, the INS offered no evidence indicating that the woodcarvers had not been paid $5.00 per hour. In *La Madrid-Peraza*, however, the petitioner already had been given her visa. As we have pointed out earlier, the INS must sustain a much heavier burden of proof when it seeks to invalidate a visa that already has been granted. Here, no visas have been issued.

## VI. CONCLUSION

Substantial evidence supports the decision of the INS. The district court's action setting that decision aside was error. Accordingly, we reverse and remand with direction to dismiss the complaint.

REVERSED and REMANDED.