**CALEXICO WAREHOUSE, INC., Plaintiff,**

v.

**Donald W. NEUFELD, Director, and Robert P. Wienmann, Director, U.S. Immigration and Naturalization Service, Defendants.**

**No. CIV. 00CV0169BTM(JFS).**

United States District Court, S.D. California.

Nov. 26, 2002.

Robert A. Mautino, Mautino and Mautino, San Diego, CA, for plaintiff.

## ORDER GRANTING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STIVEN, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Calexico Warehouse, Inc., ("Calexico") filed suit challenging the United States Immigration and Naturalization Service's ("INS") decision to revoke the visa petition that Calexico filed on behalf of the beneficiary, Gilda Villanueva ("Villanueva"). Calexico filed a Motion for Summary Judgment, asserting: 1) the INS and the American Consul revoked the visa petition filed by Calexico on behalf of Villanueva for reasons not found in the law or regulations; 2) at all times since the visa petition was filed, Villanueva has met the requirements set forth for an "L" visa to be issued; and, 3) the INS decision to revoke Calexico's visa petition should be reversed as a matter of law.

The INS filed a cross-motion to dismiss or for summary judgment arguing: 1) this Court lacks subject matter jurisdiction because Calexico failed to assert applicable law granting this Court jurisdiction; 2) Congress expressly vested the Attorney General with the discretion to revoke visa petitions, eliminating this Court's ability to review a decision by the INS; and, 3) even if this Court has jurisdiction to review the INS's decision, this Court should grant the Government's summary judgment motion

because there was no abuse of discretion by the INS when it revoked Calexico's visa petition.

This Court held oral argument in the above entitled action on September 17, 2002 and subsequently ordered supplemental briefing to clarify certain points raised by counsel. This Court held a second hearing on this matter on October 25, 2002, after which the Court took the respective motions under submission.

For the reasons stated herein, the Court **HEREBY GRANTS** the Government's cross-motion for summary judgment and **DENIES** Calexico's motion for summary judgment.

## II. BACKGROUND

Pertinent to the instant case is the procedure by which nonimmigrant "L" type visas are granted or denied by the INS and American Consuls. First, the petitioner must file a visa petition at an American Consulate Office. The visa petition is forwarded by the Consulate to an INS Service Center, where it is either approved or denied. *See* 8 C.F.R. § 214.2(*l*)(2). If the visa petition is approved, it is then returned to the consulate office where it was filed and the American Consul makes the final decision on whether to grant or deny the visa.[1] If the American Consul decides to deny the visa, the INS is informed of that decision and the INS may subsequently send a Notice of Intent to Revoke ("NIR") the visa petition to the petitioner. *See* 8 C.F.R. § 214.2(*l*)(9)(iii). The petitioner has thirty days from the

receipt of the NIR in which to present rebuttal evidence. *See* 8 C.F.R. § 214.2(*l*)(9)(B). The director considers all relevant information in making his/her final decision of whether or not to revoke the visa petition. *Id.* If the petition is denied or revoked, an appeal process is available pursuant to 8 C.F.R. § 103. *See* 8 C.F.R. § 214.2(*l*)(10).

In the present case, Calexico, which is claimed to be the U.S. affiliate of the Mexican Company, Exclusivas Infantiles ("Exclusivas"), filed a visa petition on or about May 4, 1998 on behalf of Gilda Villanueva, president and owner of Calexico, requesting that the INS issue a "L" type visa.[2] The INS initially approved Calexico's visa petition, however, the American Consulate General denied Villanueva the actual visa.[3] In a letter sent by the Consulate General in Tijuana, Lori A. Stubbs, visa specialist, stated that Villanueva was denied a visa after an interview revealed that she did not qualify for a "L" type visa. *See* C.R. at 419. Additionally, Ms. Stubbs wrote that "[i]t appears that [Villanueva] is just looking for a way to live legally in the U.S." *Id.*

Calexico filed its first lawsuit against the Secretary of State in December 1998, alleging that Villanueva was entitled to a "L" type visa as a matter of law.

On January 27, 1999, the INS sent a NIR regarding the previously-approved visa petition, which reads, in part: "[t]he visa was refused on the basis of a nonqualifying relationship . . . . [T]he evidence

---

1. It is possible that a visa petition may be approved, but without the consulate granting the actual visa.

2. "L" type visas are issued pursuant to 8 C.F.R. § 214.2(*l*) and defined under 8 U.S.C. 1101(a)(15)(L). "L" type visas are issued to nonimmigrant individuals who work for foreign corporation seeking to continue to render services in a managerial or executive ca-

pacity for a U.S. affiliate or subsidiary of the foreign corporation.

3. The California Service Center (CSC), a branch of the INS, was the office in charge of all the actions taken by the INS except where noted. However, for simplicity, the term "INS" is used throughout to represent the actions taken by the CSC.

of record does not establish that the beneficiary is the owner of both entities or that she is acting in a managerial or executive capacity."[4]  C.R. at 410.

On March 12, 1999, the INS issued a notice of decision revoking the visa petition; Calexico filed an appeal on April 12, 1999.

In October 1999, the INS sent a letter to Calexico stating that it would forward the case file and all other documentation to the Administrative Appeals Office ("AAO") in Washington D.C. if the petitioner, Calexico, filed a Form I–290B.[5]  Pending the outcome of the administrative appeal, Calexico dismissed the December 1998 lawsuit on November 8, 1999.

On January 25, 2000, Calexico discovered that the case had not been forwarded to the AAO for review.  Calexico filed the instant lawsuit on January 26, 2000, which remained inactive while Calexico sought to exhaust its administrative remedies through the INS and the AAO.[6]

On May 25, 2001, Calexico filed its most recent administrative appeal of the decision to revoke Calexico's visa petition filed on behalf of Villanueva.  On November 29, 2001, the AAO issued its final order affirming the INS decision to revoke the visa petition.

Calexico filed its motion for summary judgment in the instant action on June 3, 2002.  In its moving papers, Calexico alleges: 1) the INS and the American Consul revoked the visa petition filed by Calexico on behalf of Villanueva for reasons not found in the law or regulations; 2) at all times since the visa petition was filed,

Villanueva has met the requirements set forth for an "L" visa to be issued; and, 3) the INS decision to revoke Calexico's visa petition should be reversed as a matter of law.

The Government's cross-motion was filed on July 9, 2002.  The Government maintains: 1) this Court lacks subject matter jurisdiction because Calexico failed to assert applicable law granting this Court jurisdiction; 2) Congress expressly granted the Attorney General with the discretion to revoke visa petitions, eliminating this Court's ability to review a decision by the INS; and, 3) even if this Court has jurisdiction to review the INS's decision, this Court should grant the Government's summary judgment motion because there was no abuse of discretion by the INS when it revoked Calexico's visa petition.

This Court held oral argument on the motion and cross-motion for summary judgment on September 17, 2002.  At that hearing, the Court determined that it could not rule on either motion due to the parties' failure to articulate clearly the bases for their positions or the duties reserved to the Court pursuant to the immigration laws. The Court ordered additional briefing on the following issues:

1.  Does the Immigration and Naturalization Service's (INS) authority to revoke a non-resident alien visa petition stem from 8 U.S.C. § 1155, or does it come from some other code section?  If from another code section, state the section or regulation and cite authority.

---

4.  The two entities referred to are Calexico Warehouse, Inc., and Exclusivas Infantiles.

5.  Generally, there is a filing fee of $110.00 to initiate the appeal process.  For reasons that are unclear, in this case Calexico paid the fee before filing the Form I–290B.  *See* C.R. at 399.

6.  This Court did maintain control over the litigation, requiring that the parties file periodic status reports as to the processing of the administrative appeal.

2. Assuming the INS's authority to revoke a non-resident alien visa petition stems from 8 U.S.C. § 1155, do 8 U.S.C. § 1252(a)(2)(B), and the sections cross-referenced therein, bar judicial review of an INS administrative decision to revoke a nonimmigrant visa petition? Cite authority.

3. To what types of action does 8 U.S.C. § 1252(a)(2)(B) apply, i.e., when does the INS or the Attorney General invoke Section 1252(a)(2)(B)? Cite authority.

4. With respect to the granting of a nonimmigrant "L" type visa (8 U.S.C. 1101(a)(15)(L)), what is the procedure for filing, approving or revoking such a petition? Cite authority which authorizes that procedure?

5. Assuming that this Court has the power to review the administrative decision taken by the INS or the Attorney General in this case, what authority exists to guide the Court in fashioning a remedy? What federal law grants this Court the authority to fashion a remedy? What are appropriate remedies? Cite authority

*See* Doc. No. 30 at 2. The parties filed their respective supplemental briefs on October 11, 2002. The Court held a second hearing in this matter on October 25, 2002.

## III. DISCUSSION

Pursuant to 28 U.S.C. § 636(c), the parties consented to having the instant case heard and adjudicated by the Honorable James F. Stiven, United States Magistrate Judge. *See* Doc. No. 24. Accordingly, Judge Stiven has jurisdiction to rule on the parties' motion and cross-motion for summary judgment.

### ·A. Subject Matter Jurisdiction

■ Although the Government argues that this Court does not have jurisdiction to review the AAO's decision, this Court has the jurisdiction to determine whether it has jurisdiction to review the INS's decision. *See Flores–Miramontes v. INS,* 212 F.3d 1133, 1135 (9th Cir.2000).

#### 1. Standard of law

District courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331. "To bring a case within a *statute,* a right or immunity created by the Constitution or *laws* of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Gully v. First Nat'l Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936) (emphasis added). "In order to assert federal jurisdiction under 28 U.S.C. § 1331, the plaintiff's claim must be founded directly upon federal law." *Robison v. Wichita Falls and North Texas Community Action Corporation,* 507 F.2d 245, 249 (5th Cir.1975).

A party may file a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See* Fed.R.Civ.P. 12(b)(1).

#### 2. 8 U.S.C. § 1155 and nonimmigrant visa petitions

■ In its cross-motion for summary judgment, the Government asserted that 8 U.S.C. § 1155, and the sections referenced therein, vest the Attorney General (or his/her designees) with the authority to, at his/her discretion, revoke visa petitions. The Government adduced that because Section 1155 grants the Attorney General discretion to revoke visa petitions, Section 1155 also divests the district courts' authority to review discretionary decisions made by the Attorney General (or his/her designees).

Calexico's counsel disputed this interpretation of Section 1155. Calexico argued that Section 1155 applies to the Attorney General's discretion regarding immigrant visa petitions. Calexico alleged that because it sought a *nonimmigrant "L" type visa*, that Section 1155 does not control and therefore does not divest the district courts of the authority to review revocations of nonimmigrant visa petitions.

The moving papers and accompanying briefs were not clear on the issue. Accordingly, the Court ordered supplemental briefing on whether or not Section 1155 applies to the instant action.

In their supplemental briefs, both Calexico and the Government *agreed* that 8 U.S.C. § 1155 does *not* apply to the instant action. *See* Doc. No. 31 at 1–2; *see also* Doc. No. 32 at 2. Both parties agree that Section 1155 only applies to the Attorney General's authority regarding immigrant visas and does *not* grant the Attorney General or the INS any power with respect to *nonimmigrant visas*, which is the type of visa Calexico seeks for Villanueva. Consequently, Section 1155 does not usurp this Court's subject matter jurisdiction to review the INS's decision to revoke Calexico's visa petition.

### 3. 8 U.S.C. § 1252 and nonimmigrant visa petitions

■ In reviewing the arguments advanced by the Government regarding whether or not this Court has subject matter jurisdiction, the Court sua sponte queried the parties whether 8 U.S.C. § 1252, specifically Section 1252(a)(2)(B), divests district courts of jurisdiction to review decisions committed to the discretion of the Attorney General (or his/her designees).[7] At the first motion hearing, the parties did not sufficiently answer the question. Accordingly, the Court ordered supplemental briefing on the subject.

> Section 1252(a)(2)(B) reads:
>
> [n]otwithstanding any other provision of law, no court shall have jurisdiction to review ... (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General ....

8 U.S.C. § 1252(a)(2)(B). After reading the parties' supplemental briefs and conducting independent research, the Court concluded that 8 U.S.C. § 1252(a)(2)(B) seems to divest district courts of jurisdiction to review decisions committed to the discretion of the Attorney General pursuant to subchapter II of chapter 12 of Title 8, which covers Sections 1151 through 1378. *See CDI Information Services, Inc. v. Reno*, 278 F.3d 616, 619 (6th Cir.2002). In its supplemental briefing, the Government maintains that nonimmigrant visa petitions are governed by 8 U.S.C. § 1184.[8] Because it agreed with the Government's

---

7. In its cross motion for summary judgment, the Government cited to *Systronics Corp. v. INS*, 153 F.Supp.2d 7 (D.D.C.Cir.2001), for the proposition that district courts lack subject matter jurisdiction to review decisions that are committed to the discretion of the Attorney General. *See* Doc. No. 25 at 5. The Court in *Systronics* relied on *Matsuk v. INS*, 247 F.3d 999 (9th Cir.2001), to support its position that Congress usurped district courts' jurisdiction to review decisions committed to the Attorney General's discretion. In *Matsuk*, the Ninth Circuit held that pursuant to 8 U.S.C. § 1252, the Court lacked jurisdiction to review the order of removal and the denial of withholding by the INS under the authority granted it by the Attorney General. *See Matsuk*, 247 F.3d at 1000. That analysis led this Court to 8 U.S.C. § 1252.

8. The Government also contends that Section 1184, in combination with 8 U.S.C. § 1103, is what permits the Attorney General to promulgate 8 C.F.R. § 214.2, which describes the process for which a party applies for a nonimmigrant "L" type visa. *See* Doc. No. 31 at 5–6.

contention and, based on the case law, postulated Section 1184 to be subject to Section 1252(a)(2)(B), the Court tentatively found that it did not have jurisdiction to review the INS's decision in the instant case.

However, after the October 25, 2002 hearing, the Court declines to adopt that view. At that hearing, the Court specifically asked the Government's attorney whether the Government contended that Section 1252(a)(2)(B)(ii) divests district courts of jurisdiction to review this kind of INS decision. The exchange proceeded as follows:

> **Government's Counsel:** ... I know that the Department of Justice has struggled over this, whether to assert that this section here, 1252(a)(2)(B)(ii), prohibits—would prohibit jurisdiction on precisely these kinds of cases.
>
> And, at first, they did take that position and they asserted it and then they backed off. So that I really can't suggest it. I mean, I've been—
>
> **The Court:** You can't suggest what?
>
> **Government's Counsel:** That the Court doesn't have jurisdiction because of 1252(a)(2)(B)(ii). I mean, that's the— the Department of Justice has instructed, you know, its attorneys not to take that position, not to make that suggestion ....
>
> ...

> **The Court:** ... Are you asserting that 1252 bars the Court from reviewing or not?
>
> **Government's Counsel:** I am not, Your Honor.

Transcript of Proceedings before Hon. James F. Stiven on October 25, 2002 at 15–16 (hereafter "Transcript").

Additionally, the Court recognizes that there is a split of authority among the circuits regarding whether or not Section 1252 divests district courts of subject matter jurisdiction to review INS decisions, aside from those decisions dealing with orders of removal.[9] *Compare Sabhari v. Reno,* 197 F.3d 938, 940 (8th Cir.1999) (holding that, even in light of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), district courts may retain jurisdiction to review some administrative actions unrelated to orders of removal); *Talwar v. INS,* 2001 WL 767018, at *3–5 (S.D.N.Y.2001); *Mart v. Beebe,* 94 F.Supp.2d 1120, 1124 (D.Or.2000) (for support that district courts have jurisdiction to review certain INS decisions despite Section 1252); *with CDI,* 278 F.3d 616, 619 (6th Cir.2002); *Iddir v. INS,* 301 F.3d 492, 497 (7th Cir.2002) (holding that Section 1252 divests district courts of jurisdiction to review decisions committed to the discretion of the Attorney General). The Ninth Circuit, however, has not squarely addressed this issue.[10],[11]

---

**9.** *See* Kathleen M. Sullivan, *A Judge's Benchbook on Immigration Law and Related Matters,* § 13.03(3)(a), A.B.A. Judicial Immigration Education Project (2001).

**10.** Calexico argues that in *Abboud v. INS,* 140 F.3d 843 (9th Cir.1998), the Ninth Circuit specifically held that Section 1252 does not divest courts of jurisdiction for matters not involving orders of removal. However, in *Abboud,* the Court relied, in part, on 28 U.S.C. § 1331 in combination with 8 U.S.C. § 1329 to assert jurisdiction. 8 U.S.C. § 1329 was amended by the 1996 IIRIRA to divest courts of jurisdiction unless the case is

brought by the United States. *See Abboud,* 140 F.3d at 846, n. 1. Abboud sought review before the effective date of the IIRIRA and hence, the Court in that case was not constricted by the amendment to Section 1329 which limited district courts' jurisdiction. The Court in *Abboud* left unclear whether it would have found jurisdiction based solely on Section 1331 in combination with 5 U.S.C. §§ 701–706.

**11.** The Court Notes that in *Montero–Martinez v. Ashcroft,* 277 F.3d 1137 (9th Cir.2002), the Ninth Circuit held that the Court *could* review a decision by the INS/BIA finding petitioners

Because of the split of authority among the circuits, the lack of direction from the Ninth Circuit Court of Appeals, and the Government's specific statement that they do not assert that Section 1252 divests district courts of subject matter jurisdiction, the Court declines to find that 8 U.S.C. § 1252(a)(2)(B) divests this Court of Subject Matter Jurisdiction in the instant action.

### 4. Jurisdiction Pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–706

Calexico asserts that this Court has subject matter jurisdiction to review the INS's decision to revoke Calexico's visa petition pursuant to the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–706, together with 28 U.S.C. § 1331. *See* Doc. No. 32 at 3. Calexico contends that 28 U.S.C. § 1331 grants this Court jurisdiction to review issues involving federal questions. *Id.; see also* Doc. No. 27 at 1. Calexico further advances the proposition that the APA is the federal law through which 28 U.S.C. § 1331 applies. *See* Doc. No. 32 at 3. Although it references 5 U.S.C. § 706 as setting the scope of review, Calexico fails to cite specific authority, other than simply stating that 5 U.S.C. §§ 701–706 provide review power, for its argument that this Court has subject matter jurisdiction.[12]

The Government fails to address directly whether the APA, together with 28 U.S.C. § 1331, grants this Court subject matter jurisdiction. The Government does, however, argue that traditionally, in cases involving judicial review of INS decisions, Section 1331 has been applied through 8 U.S.C. § 1329. The Government alleges that because 8 U.S.C. § 1329 was amended by the IIRIRA to limit district courts' jurisdiction to cases brought "by the United States," Section 1329 does not grant this Court jurisdiction in the instant action where the case was brought by Calexico. 8 U.S.C. § 1329.

However, Calexico does not and never has asserted jurisdiction pursuant to 8 U.S.C. § 1329, but rather asserts jurisdiction pursuant to the APA.

In reviewing the case law and treatises, the Court found some authority to support Calexico's position. The American Bar Association suggests that, unless expressly barred by statute, "[i]mmigration matters, including matters as INS *denials of petitions for immigrant and nonimmigrant status,* are generally reviewed under the Administrative Procedures Act ... in conjunction with 28 U.S.C. § 1331." Kathleen M. Sullivan, *A Judge's Benchbook on Immigration Law and Related Matters,* § 13.09, A.B.A. Judicial Immigration Education Project (2001) (emphasis added). Additionally, the Eighth Circuit held that even in cases where Sections 8 U.S.C. §§ 1252 and 1329 would otherwise seem to bar district courts' jurisdiction to review administrative decisions, those same courts can exercise jurisdiction pursuant to 5 U.S.C. § 702 *et seq.* in combination with 28 U.S.C. § 1331. *See Sabhari v. Reno,* 197 F.3d 938, 942–43 (8th Cir.1999) (relying on *Abboud,* 140 F.3d 843 (9th Cir.1998), for support of its holding that the APA and Section 1331 grant district courts subject matter jurisdiction to review administrative decisions taken by the INS).

---

ineligible for cancellations of removal. In *Montero–Martinez,* the Ninth Circuit held that because the INS/BIA decision in that case presented a purely legal issue, and *not* a discretionary decision, the Court had jurisdiction to review the decision, notwithstanding Section 1252.

**12.** *See* p. 1075, *infra,* for a discussion of 5 U.S.C. §§ 702 & 704; *see also* Section B(2) at pp. 1075–1076, *infra,* for discussion of 5 U.S.C. § 706.

Further, under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Also, the APA provides that "final agency action for which there is no other remedy *in a court* [is] subject to judicial review." 5 U.S.C. § 704 (emphasis added). The Court in *Sabhari* used these code regulations to find that district courts have subject matter jurisdiction to hear administrative decisions made by the INS.

Accordingly, this Court **FINDS** that the APA, together with 28 U.S.C. § 1331, grants the Court subject matter jurisdiction to hear the instant case.

### B. Review of the AAO's Decision

Finding that it has subject matter jurisdiction to hear the instant case, the Court must now turn to the merits of the INS's decision to revoke Calexico's visa petition.

#### 1. Standard of Law—Summary Judgment

Pursuant to rule 56 of the Federal Rules of Civil Procedure, courts may grant summary judgment when the evidence read in the light most favorable to the nonmoving party demonstrates: 1) that there is no *genuine issue of material fact* and, 2) the moving party is entitled to judgment *as a matter of law*. *See* Fed.R.Civ.P. 56 (emphasis added); *see also Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir.2002).

The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists. *See* Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2725. "A material fact is one which may affect the outcome of the litigation." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). "[T]he rule 56 formulation requires [the court] to decide whether there

is a 'genuine issue' concerning" material facts. Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2725.

After it determines that there is no genuine issue of material fact, the Court must determine if the appropriate law supports granting summary judgment in favor of the moving party. *See* Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2725.

#### 2. Standard of review

Pursuant to the APA, the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "[T]he ultimate standard of review under 5 U.S.C. § 706(2)(A) is a narrow one ... [where] the [reviewing] court is not empowered by section 706(2)(A) to substitute its judgment for that of the agency." *Northwest Motorcycle Assoc. v. U.S. Dept. Agriculture*, 18 F.3d 1468, 1471 (9th Cir.1994). "In reviewing an agency's decision·under section 706(2)(A), a court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* (Citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). "In order for an agency action to be upheld under the arbitrary and capricious standard, a court must find the evidence before the agency provided a rational and ample basis for its decision." *Northwest Motorcycle Assoc.*, 18 F.3d at 1471.

Here, the focus of the agency action is that, in its NIR, the INS stated that the visa was refused "on the basis of a nonqualifying relationship.... [T]he evidence does not establish that the beneficiary is

the owner of both entities [13] or that she is acting in a managerial or executive capacity." [14] C.R. at 410.

### 3. Analysis—plaintiff's motion for summary judgment

■ Calexico contends that the evidence shows that when the visa petition was filed, Villanueva clearly qualified under the applicable statutes to receive a "L" type visa and that the INS abused its discretion by revoking the visa petition. First, Calexico asserts that, pursuant to 8 C.F.R. 214.2(*l*)(1)(ii)(G) and (L), it submitted ample evidence to prove that it was a qualifying organization as Villanueva owned and continues to own 100% of both Exclusivas and Calexico.[15] *See* Doc. No. 23 at 7.

Second, Calexico argues that Villanueva was entitled to a visa because her duties at Exclusivas qualify as "executive" in nature as described in 8 C.F.R. 214(*l*)(1)(ii)(C). Calexico attests that, while employed at Exclusivas, Villanueva conceived of the idea to set up a cross border warehouse (Calexico) in order to help Exclusivas, her Mexican Corporation, before Calexico filed for a visa petition on her behalf. *See* Doc.

No. 23 at 9. Calexico states that during the relevant period, Villanueva was president of Exclusivas, thus establishing her executive capacity. Also, Calexico asserts that Villanueva would make advertising campaign decisions, and other important strategic decisions indicative of her executive responsibilities for Exclusivas. *See* Doc. No. 23 at 9, lls. 14–23.

Third, Calexico asserts that Villanueva also qualifies as a "manager" under 8 C.F.R. 214(*l*)(1)(ii)(B). Calexico argues that Villanueva's day-to-day activities, including the ability to hire and fire employees and her supervisory responsibilities, are indicative of her managerial role. *See* Doc. No. 23 at 10.

Fourth, Calexico argues that the INS failed to weigh all the evidence presented in making its determination to revoke Calexico's visa petition. Calexico argues that it presented, "[o]verwhelming evidence regarding the position that the beneficiary held in Mexico and that she proposed to hold in the United States." Transcript at 24–25. Calexico further argues that, as a matter of law, it submitted sufficient evidence to prove that Villanueva qualifies for a "L" type visa.[16] *Id.*

---

**13.** The record reflects that the issue was whether Villanueva owned and controlled Calexico so as to qualify it as an "affiliate" organization under 8 C.F.R. § 214.2(*l*)(1)(ii)(G) and (L).

**14.** The record reflects that the issue was the adequacy of Petitioner's proof that Villanueva had served in an executive or managerial capacity at Exclusivas during at least one full year between 1995 and 1997, as required by 8 C.F.R. § 214.2(*l*)(1)(ii)(B) or (C).

**15.** Calexico submitted its Articles of Incorporation, the Statement of the Domestic Stock Corporation, Copies of the Stock Certificates issued to Villanueva; its 1997 and 1998 Federal Tax Returns, including Schedule K; a memorandum from the incorporator confirming that 1000 shares of stock were issued to Villanueva, and a letter from corporate counsel stating that Villanueva owned 100% of all

outstanding shares; and a lease executed by Villanueva for Calexico as evidence of Villanueva's ownership of Calexico. (The INS did not dispute Villanueva's ownership of Exclusivas.)

**16.** Pursuant to 8 C.F.R. § 214.2(*l*), "[u]nder section [1]101(a)(15)(L) of the Act, an alien who within the preceding three years has been employed abroad for one continuous year by a qualifying organization may be admitted temporarily to the United States to be employed by a parent, branch, affiliate, or subsidiary of that employer in a managerial or executive capacity...." 8 C.F.R. § 214.2(*l*)(1)(i). When filing a petition on behalf of the intracompany transferee/beneficiary, the petitioning employer must provide the following:

(i) evidence that the petitioner and the organization which employed or will employ the alien are qualifying organiza-

Calexico concludes that the INS's decision to revoke the visa petition and the AAO's affirmance of that decision were based on reasons not found in the law or the regulations. Further, Calexico asserts that there was no factual basis for the denial and accordingly, because the INS abused its discretion, this Court should grant Calexico's motion for summary judgment.

However, while the weight of the evidence clearly favors the Petitioner, Calexico's argument fails to show that the INS abused its discretion. Section 214.2(*l*) states that an individual petition for a "L" type visa *shall* be accompanied by, among other things, "[s]uch other evidence as the director, in his or her discretion, may

deem necessary." [17] 8 C.F.R. § 214.2(*l*)(3)(viii). In the instant case, on the issue of Villanueva's 100% ownership of the Petitioner, Calexico recognizes that it failed to produce Calexico's stock ledger as requested by the INS. *See* Transcript at 23. At the motion hearing held on October 25, 2002, Plaintiff's Counsel stated: "I cannot completely tell [the Court] why [the stock ledger] was unavailable." *Id.* Calexico offered no further explanation as to why the requested stock ledger was not produced.

In its opinion affirming the INS's revocation of Calexico's visa petition, the AAO stated, "petitioner has not submitted *sufficient* documentary evidence to establish that the beneficiary maintains the claimed

tions as defined in paragraph (*l*)(1)(ii)(G) of this section.

(ii) Evidence that the alien will be employed in an executive, managerial, or specialized knowledge capacity, including a detailed description of the services to be performed.

(iii) Evidence that the alien has at least one continuous year of full time employment abroad with a qualifying organization within three years preceding the filing of the petition.

(iv) Evidence that the alien's prior year of employment abroad was in a position that was managerial, executive, or involved specialized knowledge and that the alien's prior education, training, and employment qualifies him/her to perform the intended services in the United States
. . . .

(v) If the petition indicates that the beneficiary is coming to the United States as a manager or executive to open or be employed in a new office in the United States, the petitioner shall submit evidence that:

(A) Sufficient physical premises have been secured;

(B) The beneficiary has been employed for one continuous year in the three year period preceding the filing of the petition in an executive or managerial capacity and that the proposed employment involved executive or managerial authority over the new operation; and

(C) The intended United States operation, within one year of the approval of the petition, will support an executive or managerial position as defined in paragraphs (*l*)(1)(ii)(B) or (C) of this section, supported by information regarding:

(1) The proposed nature of the office describing the scope of the entity, its organizational structure, and its financial goals;

(2) The size of the United States investment and the financial ability of the foreign entity to remunerate the beneficiary and to commence doing business in the United States; and

(3) The organizational structure of the foreign entity.
. . .

(vii) If the beneficiary is an owner or major stockholder of the company, the petition must be accompanied by evidence that the beneficiary's services are to be used for a temporary period and evidence that the beneficiary will be transferred to an assignment abroad upon the completion of the temporary services in the United States.

(viii) **Such other evidence as the director, in his or her discretion, may deem necessary.**

8 C.F.R. § 214.2(*l*)(3) (emphasis added).

**17.** *See* note 16, *supra,* for the list of evidence Petitioner must provide when seeking a "L" type visa.

ownership interest in the petitioning United States Corporation." C.R. at 7 (emphasis added). By its own admission, Calexico failed to comply with the requests made by the INS in order to clear up any ambiguity and consequently failed to comply with 8 C.F.R. § 214.2(*l*)(3)(viii).

Furthermore, as discussed at pages 22–23, *infra*, the AAO found that the record contains "conflicting evidence regarding the actual number of shares issued by the petitioning corporation as well as the resulting ownership." C.R. at 7. Despite all other evidence submitted by Calexico in the instant case, Calexico's failure to comply with the INS's request is sufficient for the INS, in its discretion, to revoke Calexico's visa petition.

Calexico also disputes the INS stating that Villanueva's listed duties at Exclusivas did not qualify as managerial or executive in nature. Sections 214.2(*l*)(ii)(B) and (C) specifically define the types of activities considered "managerial"[18] and/or "executive."[19] In attempting to determine Villanueva's role as either manager or executive, the INS requested that the Petitioner supply an organizational chart for Exclusivas for the critical period.[20] *See* C.R. at 10. Calexico failed to supply the requested organizational chart for the critical period, which contributed to the INS's determination that Villanueva's duties at Exclusivas did not qualify as managerial or executive in nature. In its opinion affirming the INS's revocation, the AAO states:

> ... contrary to counsel's claim that the beneficiary manages and directs the overall operations of the company, the evidence of record indicates that the beneficiary is actually performing the basic operations of the company. The record includes various sales invoices and shipping documents that are signed by the beneficiary, clearly indicating that the beneficiary has been performing the non-managerial clerical function of the enterprise. An employee who primarily performs the tasks necessary to produce a product or to provide services for which the employee has authority. A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional.

18. Pursuant to 8 C.F.R. § 214.2(*l*)(1)(ii)

> (B) Managerial capacity means an assignment within an organization in which the employee primarily:
> (1) Manages the organization, or a department, subdivision, function, or component of the organization;
> (2) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
> (3) Has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) if another employee or other employees are directly supervised; if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
> (4) Exercises discretion over the day-to-day operations of the activity or function

19. Pursuant to 8 C.F.R. § 214.2(*l*)(1)(ii)

> (C) Executive capacity means an assignment within an organization in which the employee primarily:
> (1) Directs the management of the organization or a major component or function of the organization;
> (2) Establishes the goals and policies of the organization, component, or function;
> (3) Exercises wide latitude in discretionary decision-making; and
> (4) Receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

20. *See* note 24, *infra*, for discussion of "critical period."

is not considered to be employed in a managerial or executive capacity.

C.R. at 13 (citations omitted). Based on the evidence provided, the AAO determined that Villanueva did not qualify as a manager or executive under the applicable statute and declined to reverse the INS's revocation of Calexico's visa petition.

Despite the substantial amount of evidence Calexico produced to support the visa petition filed on behalf of Villanueva, the Court finds that the INS did not commit clear error when it revoked Calexico's visa petition.[21] The Court further finds that the INS's decision was based on reasons found in the "law or regulations." Accordingly, the INS did not abuse its discretion in revoking Calexico's visa petition.

#### 4.    Analysis—defendant's cross-motion for summary judgement

The Government filed a cross-motion to dismiss for lack of subject matter jurisdiction or for summary judgment.[22] With respect to the cross-motion for summary judgment, the Government argues that this Court should not disturb the AAO's decision because there is "good and sufficient cause" to revoke Calexico's visa petition.    Doc. No. 26 at 6. The Government asserts that it is entitled to judgment as a matter of law once it produces substantial evidence supporting its determination. *Id.* (citing *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman,* 736 F.2d 1305, 1309 (9th Cir. 1984)).    In order to set aside the INS's revocation of the visa petition, this Court would have to find the action to be "arbi-

trary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).    The Ninth Circuit has held that it is an abuse of discretion for the agency to act "if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Tongatapu,* 736 F.2d at 1308 (citing *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir. 1971)).

First, the Government argues that it is entitled to summary judgment because Calexico failed to submit requested evidence to show how much stock had been issued by Calexico.    Although the Government concedes that Calexico did provide some evidence regarding stock ownership, it contends that Calexico failed to submit Calexico's stock ledger as requested by the INS. *See* Doc. No. 26 at 7; *see also* C.R. at 7. The Government further contends that there is conflicting evidence in the 1997 and 1998 tax returns that raised suspicion that more than 1000 shares of stock had been issued.    *Id.* The Government asserts that inconsistent evidence is sufficient to establish "good and sufficient cause" for visa petition revocation.    *Id.* at 7.

Second, the Government argues that it had "good and sufficient cause" to revoke the petition because there was not sufficient evidence to support Villanueva's qualification as a manager or executive.[23] Doc. No. 26 at 6. The Government contends that Calexico did not provide a detailed description of Villanueva's managerial duties and that Calexico failed to provide an organizational chart for the relevant time period.[24]    *See* Doc. No. 26

---

**21.** If the applicable standard required the Court to conduct a *de novo* review of the INS action to revoke, equity would mandate that the Court find that Petitioner provided sufficient evidence to support reversing the INS decision to revoke the visa petition. However, because the Court is authorized by the applicable jurisdictional statute *only* to review for an abuse of discretion by the INS, the

Court cannot make such a finding in the instant case. *See* 5 U.S.C. § 706(2)(A).

**22.** *See* Subject Matter Jurisdiction Analysis at pp. 1071–1075, *supra.*

**23.** *See* pp. 1078–1079, *supra.*

**24.** Although Calexico produced an organizational chart for the period after the petition

at 8; *see also* C.R. at 12, 13. The Government maintains that the INS's concerns were legitimate and that, based on those concerns, the INS had the discretion to revoke the visa petition.

Accordingly, the Government urges this Court to leave the INS's decision undisturbed because there were legitimate concerns that created "good and sufficient" cause to revoke the visa petition. The Government argues that, based on the record, the revocation action cannot be deemed to be an abuse of discretion or contrary to the law. *See* Transcript at 19, 35.

As discussed above, the undisputed facts compel a finding that the INS acted within its discretion in revoking Calexico's visa petition. Pursuant to 8 C.F.R. 214.2(*l*)(3)(viii), Calexico was obligated to provide whatever documentary evidence the INS deemed necessary. Calexico failed to comply with such requests and the INS determined, based on the evidence presented, that Calexico's visa petition should be revoked. On appeal, the AAO reviewed the evidence presented and affirmed the INS's conclusion.

Because Calexico failed to provide requested evidence in the way of the organizational chart for the critical period, the Calexico stock ledger, and further evidence

of Villanueva's managerial or executive duties at Exclusivas; and because Calexico was unable to provide sufficient justification for why those documents were not produced or to explain the apparent contradictions in the evidence presented, this Court finds no clear error in either the INS's decision to revoke or the AAO's decision to affirm the revocation of the visa petition.[25]

Accordingly, the Court **FINDS** that the instant case presents no genuine issue of material fact and that the Government is entitled to judgment as a matter of law. The Court hereby **GRANTS** the Government's cross-motion for summary judgment.[26]

## IV. CONCLUSION

For the reasons contained herein, the Court **FINDS** that it has subject matter jurisdiction to hear the instant case. Additionally, the Court **HEREBY GRANTS** the Government's cross-motion for summary judgment and **DENIES** Calexico's motion for summary judgment.

**IT IS SO ORDERED.**

---

was filed, the AAO found that Calexico failed to produce an organizational chart for the critical period, defined as one year of managerial or executive duties in the three years preceding the filing of the petition. *See* C.R. at 13. The AAO stated that an organizational chart that does not detail the structure of the organization during the critical period is irrelevant to the beneficiary's claimed managerial or executive capacity with the foreign entity during that period. *Id.*

25. The parties did not address the requirements of 8 C.F.R. § 214.2(*l*)(3)(v) or (vii), but a review of the record casts some doubt on whether petitioner supplied adequate evidence on these issues.

26. This Court's review of the complex statutory scheme regulating the approval and/or revocation of non-immigrant visa petitions and/or the granting of visas, places broad discretion in the INS and/or the State Department. Even if the Court were to find the INS abused its discretion in revoking the petition, such a finding would not and could not mandate that the State Department issue the non-immigrant visa in the instant case, nor would it grant Villanueva any right to remain in the United States. *See, e.g., Tongatapu,* 736 F.2d at 1308.